**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 09-36439-PSH |
| | ) | Chapter 7 |
| SYSIX TECHNOLOGIES, LLC, | ) | |
| | ) | Hon. Pamela S. Hollis |
| Debtor. | ) | Hearing Date:  March 20, 2014 |
| | ) | Hearing Time:  10:30 a.m. |

**COVER SHEET FOR FOURTH AND FINAL APPLICATION OF**
**SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN**
**FOR THE PERIOD OF MARCH 1, 2013 THROUGH THE CLOSE OF THE CASE**

Name of Applicant:                          Seyfarth Shaw LLP

Authorized to Provide
Professional Services to:                  Chapter 7 Trustee Gus A. Paloian

Date of Appointment:                       May 13, 2010, retroactive to April 1, 2010

Period for which Compensation
and Reimbursement is Sought:          March 1, 2013 through the Close of the Case

Amount of Compensation
Sought for this Period:                     $ 35,541.50

Amount of Expense Reimbursement
Sought for this Period:                     $   3,659.34

Amount of Final Compensation Sought:     $649,694.75

Amount of Final Expense
Reimbursement Sought:                          $ 31,885.75

This is an:     X    Final      __    Interim Application.

| Prior Applications[1] | Date Filed | Amount Requested | Amount Awarded |
|---|---|---|---|
| 1st Interim Application (Chapter 11) Period 10/8/09 - 2/26/10 | 04/08/10 [dkt 75] | $148,342.18 | $138,212.73 [dkt 82] |

---

[1] The Applicant has filed five Prior Applications - docket entries 74 and 139, for work done in its capacity as counsel to the Chapter 11 Trustee and docket entries 140, 159 and 236 for work done in its capacity as counsel to the Chapter 7 Trustee.

| | | | |
|---|---|---|---|
| 2nd & Final Application (Chapter 11) Period 3/1/10 - 3/31/10 | 10/12/11 [dkt 139] | $19,756.15 | $18,825.40 [dkt 143] |
| 1st Interim Application Period 4/1/10 - 6/30/11 (Chapter 7) | 10/12/11 [dkt 140] | $218,529.15 | $213,400.15 [dkt 144] |
| 2nd Interim Application Period 7/1/2011 - 5/31/2012 (Chapter 7) | 7/5/12 [dkt 159] | $139,195.21 | $138,608.21 [dkt 162] |
| 3rd Interim Application Period 6/1/12 - 2/28/2013 (Chapter 7) | 5/7/13 [dkt 236] | $136,375.76 | $132,077.76 [dkt 237] |

Dated: February 13, 2014

Respectfully submitted,

SEYFARTH SHAW LLP

By:/s/ James B. Sowka
    Gus A. Paloian (06188186)
    James B. Sowka (6291998)
    SEYFARTH SHAW LLP
    131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000
    gpaloian@seyfarth.com
    jsowka@seyfarth.com

    *Counsel to Chapter 7 Trustee*
    *Gus A. Paloian*

15907967v.3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 09-36439-PSH |
| | ) | Chapter 7 |
| SYSIX TECHNOLOGIES, LLC, | ) | |
| | ) | Hon. Pamela S. Hollis |
| Debtor. | ) | |
| | ) | Hearing Date:  March 20, 2014 |
| | ) | Hearing Time:  10:30 a.m. |

### FOURTH AND FINAL APPLICATION FOR COMPENSATION
### AND EXPENSE REIMBURSEMENT OF SEYFARTH SHAW LLP
### AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE
### PERIOD FROM MARCH 1, 2013 THROUGH THE CLOSE OF THE CASE

Pursuant to Sections 105(a), 330 and 331 of the United States Bankruptcy Code, 11

U.S.C. §§ 101 through 1330, *as amended* (the "Bankruptcy Code"), Seyfarth Shaw LLP

("Seyfarth"), as counsel to Gus A. Paloian, not individually or personally, but solely in his

capacity as the duly-appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the

"Estate") of the above-captioned debtor (the "Debtor"), hereby submits its Fourth and Final

Application for Compensation and Reimbursement of Expenses (the "Application") for legal

services performed, and expenses incurred, during the period of March 1, 2013 through The

Close of the Case (the "Application Period").  In support of this Application, Seyfarth

respectfully represents, as follows:

## I.  INTRODUCTION

1.      Seyfarth makes this Application pursuant to:  (i) Sections 105(a), 330 and 331 of

the Bankruptcy Code;  (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (singularly,

a "Rule";  collectively, the "Rules");  (iii) certain applicable provisions of the Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, adopted by the Office of the United States Trustee;  (iv) Rule 5082-1 of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois

(the "Court"); (v) that certain Order of the Court entered in the above-captioned case (the

"Case") authorizing Seyfarth's retention as counsel to the Trustee (the "Retention Order"); and

(vi) other applicable case law.

2.      In making this Application, Seyfarth respectfully seeks an Order of this Court

awarding and directing payment from the Estate of: (i) interim allowance of compensation in the

amount of $35,541.50 for professional services rendered by Seyfarth on behalf of the Trustee

during the Application Period; and (ii) interim reimbursement of actual and necessary expenses

in the amount of $3,659.34 incurred by Seyfarth in rendering such professional services to the

Trustee in the Case.

## II.  JURISDICTION

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue of

this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and

(b)(2)(A) and/or (O).

## III.  BACKGROUND

4.      On September 30, 2009, an involuntary petition for relief was filed against the

Debtor under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 through 1330, *as amended*.

5.      On October 8, 2009, the Court entered an order for relief under Chapter 11 of the

Bankruptcy Code and an order appointing a chapter 11 trustee.  On October 8, 2009, the Court

entered an order granting the U.S. Trustee's Motion to Appoint Gus A. Paloian as Chapter 11

Trustee in the Case.

2

6.     On April 1, 2010, the Court entered an order converting the Case from a Chapter 11 to a case under Chapter 7 of the Bankruptcy Code.

7.     Gus A. Paloian was appointed as the Chapter 7 Trustee on April 1, 2010.

8.     On May 13, 2010, the Court entered the Retention Order authorizing Seyfarth's employment retroactive to April 1, 2010 [*see* Dkt. No. 89].

9.     Fees sought are for services rendered to the Trustee as Chapter 7 Trustee.

10.     In accordance with Section 504(b)(1) of the Bankruptcy Code and Rule 2016, Seyfarth has received no promises for payment for services rendered or to be rendered in any capacity whatsoever in connection with the Case, other than specifically provided for in the Seyfarth Retention Order.  Additionally, other than as permitted by Section 504(b)(1) of the Bankruptcy Code and Rule 2016(a), no agreement or understanding exists between Seyfarth and any other entity for a division of compensation and reimbursement received or to be received for services rendered in or in connection with the Case.

### IV.  SUMMARY OF SERVICES RENDERED, AND EXPENSES INCURRED, BY SEYFARTH

#### A.  Prior Applications for Compensation and Expense Reimbursement

11.     This Application is the Fourth and Final application for compensation and expense reimbursement that Seyfarth has filed in this Case as counsel to the Chapter 7 Trustee.

12.     On April 8, 2010, Seyfarth filed its first interim application for compensation and expense reimbursement as counsel to the chapter 11 Trustee [*see* Dkt. No. 75] in which Seyfarth sought interim compensation in the amount of $146,887.00 and expense reimbursement in the amount of $1,455.18.  On April 29, 2010, the Court entered an order awarding Seyfarth interim

3

compensation in the amount of $136,859.50 and expense reimbursement in the amount of $1,353.14 [*see* Dkt. No. 82][1].

13.     On October 12, 2011, Seyfarth filed its second and final application for compensation and expense reimbursement as counsel to the chapter 11 Trustee [*see* Dkt. No. 139] in which Seyfarth sought interim compensation in the amount of $18,030.50 and expense reimbursement in the amount of $1,725.65.  On November 3, 2011, the Court entered an order awarding Seyfarth interim compensation in the amount of $17,099.75 and expense reimbursement in the amount of $1,725.65 [*see* Dkt. No. 143].

14.     On October 12, 2011, Seyfarth filed its first interim application for compensation and expense reimbursement as counsel to the chapter 7 Trustee [*see* Dkt. No. 140] in which Seyfarth sought interim compensation in the amount of $200,370.00 and expense reimbursement in the amount of $18,159.15.  On November 3, 2011, the Court entered an order awarding Seyfarth interim compensation in the amount of $ 195,241.00 and expense reimbursement in the amount of $18,159.15 [*see* Dkt. No. 144].

15.     On July 5, 2012, Seyfarth filed its second interim application for compensation and expense reimbursement as counsel to the chapter 7 Trustee [*see* Dkt. No. 159] in which Seyfarth sought interim compensation in the amount of $134,538.50 and expense reimbursement in the amount of $4,656.71.  On July 26, 2012, the Court entered an order awarding Seyfarth

---

[1] In the caption and at various other points throughout its first application (the "1st Application"), Seyfarth inadvertently referred to itself as counsel to the Chapter 7 Trustee and requested that compensation be awarded to it in said capacity.  The Order entered by the Court on April 29, 2010 (the "Order") granting allowance of compensation and expense reimbursement as requested in the 1st Application does not clearly reflect that the allowance of fees and expense reimbursement was granted on account of services rendered and expenses incurred on behalf of the Chapter 11 Trustee.  By virtue of this reference, Seyfarth desires to correct the record to properly change all references in the 1st Application and the Order from "counsel to the chapter 7 trustee" to "counsel to the chapter 11 trustee" and to properly reflect the intent of Seyfarth and the Court.

interim compensation in the amount of $133,951.50 and expense reimbursement in the amount $4,656.71 [*see* Dkt. No. 162].

16.     On April 15, 2013, Seyfarth filed its third interim application for compensation and expense reimbursement as counsel to the chapter 7 Trustee [*see* Dkt. No. 236] in which Seyfarth sought interim compensation in the amount of $134,044.00 and expense reimbursement in the amount of $2,331.76.  On May 7, 2013, the Court entered an order awarding Seyfarth interim compensation in the amount of $129,746.00 and expense reimbursement in the amount of $2,331.76 [*see* Dkt. No. 237].

## B.  Overview of Fees

17.     During the Application Period, Seyfarth has:  (i) provided legal services to the Trustee in the amount of $35,541.50 (the "Fees").

18.     The following table consists of a breakdown of the amount of Fees incurred by each Seyfarth professional, including each such professional's:  (i) title, (ii) hourly rate, (iii) total hours expended in providing legal services in the Case, and (iv) the value attributable to such legal services:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | 2.20 | $1,375.00 |
| James B. Sowka | Sr. Associate | $405.00 | 23.00 | $9,315.00 |
| Christopher J. Harney | Associate | $350.00 | 36.90 | $12,915.00 |
| Bret Harper | Associate | $305.00 | 11.50 | $3,507.50 |
| Andrew A. Connor | Paralegal | $280.00 | 8.60 | $2,408.00 |
| Jennifer M. McManus | Paralegal | $270.00 | 21.90 | $5,913.00 |
| Julie Ziegler | Case Assistant | 90.00 | 1.20 | $108.00 |

5

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| **TOTAL:** | | | **105.30** | **$35,541.50** |

19.     Biographies for the attorneys listed above who performed the bulk of the services in this matter, describing their qualifications and areas of expertise, are attached hereto as **Exhibit 1**.

20.     During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

21.     All of the compensation for which Seyfarth requests allowance and payment in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

22.     Seyfarth respectfully submits that its services rendered to the Trustee during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

### C.  Time Records

23.     Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

24.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 2** and which are incorporated herein by reference, set forth in detail:  (i) the services

6

15907967v.3

which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, (iii) the amount of time spent on the services in one-tenth of one hour increments, and (iv) the identity of each Seyfarth professional who performed such services.

### D.  Breakdown of Fees by Category of Services Rendered

25.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into five (5) categories, as follows:  (i) Case Administration;  (ii) Claims Administration and Analysis;  (iii) Investigation of Estate Claims/Adversary Proceedings/Litigation; (iv) Other Professional Fee Applications; and (v) Fee Applications.

### CASE ADMINISTRATION (4.60 HOURS VALUED AT $1,760.00)

26.     During the Application Period, Seyfarth expended 4.60 hours, worth a value of $1,760.00  on behalf of the Trustee on matters of Case Administration including:

> A.     Conferences, teleconferences, and/or correspondence regarding motion for authority to abandon and destroy records;
>
> B.     Preparing and revising case status reports in preparation for case closing;
>
> C.     Preparing and revising motion to abandon certain property of the estate in preparation for case closing;
>
> D.     Advising the Trustee as to his duties and obligations under the Bankruptcy Code; and
>
> E.     Maintaining case files and service lists for the Case.

27.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2012 HOURLY RATE | 2013 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| James B. Sowka | Sr. Associate | $395.00 | $405.00 | 2.70 | $1,093.50 |
| Jennifer M. McManus | Paralegal | $255.00 | $270.00 | 0.60 | $162.00 |
| **TOTAL:** | | | | **3.30** | **$1,255.50** |

### CLAIMS ADMINISTRATION AND ANALYSIS (55.80 HOURS VALUED AT $19,205.50)

28.    During the Application Period, Seyfarth expended 55.80 hours, worth a value of $19,205.50 on behalf of the Trustee on matters of Claims Administration and Analysis including:

A.    Reviewing and analyzing all claims filed against the Estate;

B.    Conducting legal research and reviewing Debtor documents to determine the validity of priority claims;

C.    Advising the Trustee as to the objectionable claims filed and the potential for resolution of those claims;

D.    Communicating and corresponding with the Estate's priority and tax creditors to obtain additional information and/or documentation to substantiate the claims asserted and/or to resolve claim issues without the need for formal claim objections;

E.    Communicating and corresponding with priority and unsecured creditors to obtain additional information and/or documentation to substantiate the claims asserted and/or to resolve claim issues without the need for formal claim objections;

F.    Preparing for and attending claims status meetings to determine settlement status and/or necessity of claims objections;

G.      Preparing and filing objections to claims; and appearing in Court

regarding same.

29.      A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| James B. Sowka | Sr. Associate | $405.00 | 14.60 | $5,913.00 |
| Christopher J. Harney | Associate | $350.00 | 21.00 | $7,350.00 |
| Bret Harper | Associate | $305.00 | 11.50 | $3,507.50 |
| Andrew A. Connor | Paralegal | $280.00 | 8.60 | $2,408.00 |
| Jennifer M. McManus | Paralegal | $270.00 | 0.10 | $27.00 |
| **TOTAL:** | | | **55.80** | **$19,205.50** |

**INVESTIGATION OF ESTATE CLAIMS/ADVERSARY
PROCEEDINGS/LITIGATION (17.30 HOURS VALUED AT $6,429.00)**

30.      During the Application Period, Seyfarth expended 17.30 hours, with a value of

$6,429.00 investigating Estate Claims, Adversary Proceedings, and Litigation including:

A.      Conducting legal research and reviewing claimant documents to determine

right to contribution under California law;

B.      Preparing adversary complaint regarding objections to claim and

requesting withdrawal of proof of claim;

C.      Conducting settlement negotiations with adversary defendant; and

D.      Reviewing motion to abandon in preparation of hearing; attending hearing.

31.      A breakdown of the professionals providing services in this category is as

follows:

15907967v.3

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | 1.00 | $625.00 |
| James B. Sowka | Sr. Associate | $405.00 | 1.80 | $729.00 |
| Christopher J. Harney | Associate | $350.00 | 14.50 | $5,075.00 |
| **TOTAL:** | | | **17.30** | **$6,429.00** |

### OTHER PROFESSIONAL FEE APPLICATIONS (1.40 HOURS VALUED AT $378.00)

32.     During the Application Period, Seyfarth expended 1.40 hours, with a value of $378.00 preparing the accountant's final fee application in preparation for case closing.

33.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | $270.00 | 1.40 | $378.00 |
| **TOTAL:** | | | **1.40** | **$ 378.00** |

### FEE APPLICATIONS (26.20 HOURS VALUED AT $7,769.00)

34.     During the Application Period, Seyfarth expended 26.20 hours, worth a value of $7,769.00 in preparing (i) Seyfarth's Third Fee Application as counsel to the chapter 7 trustee; and (ii) this Fourth and Final Application.

35.     Of the total time expended in this category, Seyfarth performed  16.60 hours of services worth a total value of $4,824.00 in the preparation of Seyfarth's Third Interim Fee Application, as counsel to the chapter 7 trustee, and preparation for and appearance in Court on

15907967v.3

the Fee Application.  This amount represents approximately 3.6% of the total fees requested in

that application.

36.     Of the total time expended in this category, Seyfarth performed 9.60 hours of

services worth a total value of $2,945.00 in the preparation of Seyfarth's Fourth and Final Fee

Application as counsel to the chapter 7 trustee.  This amount represents approximately 8% of the

total fees requested in that application.

37.     A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | 2013 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | $625.00 | 1.20 | $750.00 |
| James B. Sowka | Sr. Associate | $405.00 | 3.00 | $1,215.00 |
| Christopher J. Harney | Associate | $350.00 | 1.00 | $350.00 |
| Jennifer M. McManus | Paralegal | $270.00 | 19.80 | $5,346.00 |
| Julie Ziegler | Case Assistant | $90.00 | 1.20 | $108.00 |
| **TOTAL:** | | | **26.20** | **$7,769.00** |

### E.  Incurred Expenses

38.     Seyfarth maintains records of all actual and necessary out-of-pocket expenses

incurred in connection with rendering services to the Trustee.  A complete listing of the

Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 3** and

which is incorporated herein by reference.

39.     As set forth in attached **Exhibit 3**, Seyfarth advanced $3,659.34  in Expenses in

connection with the legal services it has provided to the Trustee during the Application Period.

All of the Expenses for which Seyfarth requests reimbursement in this Application related to the discharge of Seyfarth's services, as requested by the Trustee, during the Application Period.

40.     A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

41.     Additionally, Seyfarth advanced out-of-pocket expenses on behalf of the Estate for online legal research conducted through Lexis, Shepard's Service Legal Citation Service, Law Bulletin Publishing Co. and Pacer Service Center.  The charges for these expenses are *actual and at cost*.

42.     In this respect, there is no mark-up of the online legal research charges and no profit derived by Seyfarth from them.  Seyfarth ordinarily and customarily passes its discount on such services *through to the client*—in this instance, the Estate—billing the client only what Seyfarth is actually charged for use of the online resources.

43.     The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

44.     Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate at cost.

45.     Seyfarth respectfully submits that the Expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

12

## V.  **RELIEF REQUESTED**

46.     Seyfarth respectfully requests that the Court:  (i) allow and award it on an interim

basis (1) the Fees, consisting of $35,541.50 for legal services rendered to the Trustee, and (2) the

Expenses, in the amount of $3,659.34, incurred in relation to such services; and (ii) authorize and

direct the Trustee to make prompt payment of the Fees and Expenses to Seyfarth from the Estate.

47.     A proposed order providing for the requested relief is attached hereto for the

Court's consideration.

## VI.  **BASIS FOR THE REQUESTED RELIEF**

### A.  **Compensation Standards**

48.     Pursuant to Section 331 of the Bankruptcy Code, a professional person employed

under Section 327 may generally apply for interim compensation from a bankruptcy court.  See

11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional person

"reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. § 330(a)(1)(A).

49.     In determining the "extent and value of compensation," this Court has endorsed

and applied the "'lodestar' approach—multiplying the number of actual and necessary hours

reasonably expended by a reasonable hourly rate[.]"  *In re* Wildman, 72 B.R. 700, 712 (Bankr.

N.D. Ill. 1987) (Schmetterer, J.);  accord *In re* UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir.

1993) (lodestar approach provides fair compensation under Section 330);  see also City of

Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The

'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting

jurisprudence.  We have established a 'strong presumption' that the lodestar represents the

'reasonable' fee[.]").

50.     To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has

"emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same

compensation as they would earn in performing similar services outside the context of bankruptcy."[2] *In re* UNR Indus., Inc., 986 F.2d at 210 (emphasis added).  The statutory aim is twofold:  (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  UNR Indus., Inc., supra;  see also In re Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the law.") (citing legislative history to Section 330).

51.    As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate."  Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993);  see Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (*In re* Continental Ill. Sec. Litig.*), 962 F.2d 566, 568 (7th Cir. 1992)).

52.    Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate . . . is considered to be the presumptive market rate."  Small, 264 F.3d at 707.  Moreover, "[t]he lawyer's regular rate is *strongly presumed* to be the market rate for his or her services."  Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S. 1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001);  see Moriarty v. Svec, 429 F.3d 710, 718 (7th Cir. 2005) (quoting same);  see also Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the

---

[2] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases."  In re UNR Indus., Inc., 986 F.2d at 208-09;  see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

15907967v.3

meanest villain', *is* the market rate for that lawyer's services.") (emphasis added and quoting

Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom. Mason & Dixon

Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117 S. Ct. 56, 136 L.

Ed. 2d 19 (1996).

53.    Under this principle, "lawyers who fetch above-average rates are presumptively

entitled to them, rather than to some rate devised by the court."  Gusman, 986 F.2d at 1150;

accord *In re* Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.)

("Generally, so long as the rates being charged are the applicant's normal rates charged in

bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of

reasonableness.").

54.    "Only if an attorney is unable to provide evidence of her actual billing rates

should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the

community charge paying clients for similar work.'"  Mathur v. Board of Trs. of S. Ill. Univ.,

317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544,

555 (7th Cir. 1999));  see also Gusman, 986 F.2d at 1151 ("the ability to identify a different

average rate in the community" is an impermissible reason to depart from an attorney's billing

rate).

55.    Accordingly, because Seyfarth bills the vast majority of its time at a set rate for

paying clients and spends only a very small percentage of time on cases covered by fee-shifting

statutes, "there is a strong presumption that such counsel could have billed out remaining time at

the rate normally charged."  *In re* Farley, Inc., 156 B.R. at 211.

56.    Additionally, under generally accepted standards, if the services of an attorney

employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be

15

compensable.  See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (*In re* Pro-Snax Distributors, Inc.),157 F.3d 414, 421 (5th Cir. 1998); *In re* Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996);  2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999);  cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this same context, "[n]ecessary services are those that aid the professional's client in fulfilling its duties under the Code." *In re* Ben Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

57.     Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel.  See *In re* Lifschultz Fast Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate."); accord *In re* Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the economic impact on the estate of actions taken should be considered in the 'benefit to the estate' analysis"); *In re* Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same);  see, e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or interim trustee) performs necessary services when he carries out the duties set forth in § 704 of the Code.");  JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (*In re* JMP-Newcor Int'l, Inc.), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm for advising committee in reasonable way and in good faith despite lack of direct monetary benefit to debtor and estate).

58.     Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy case and related adversary proceedings," also support awards of compensation. *In re Spanjer Bros., Inc.*, 191 B.R. at 748.

59.     As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.

60.     Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

61.     Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Rules.

62.     For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

63.     Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $366.90.

64.     During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from: (A) $305.00 to $625.00 for attorneys,

17

and (B) $90.00 to $280.00 for paralegals or para-professionals.  Based upon all of the foregoing, Seyfarth respectfully submits that the fair and reasonable value of the legal services that it rendered during the Application Period is $35,541.50.

65.      In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

66.      Moreover, it is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

67.      In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

68.      Finally, and with respect to new considerations added to the Bankruptcy Code under BAPCPA—that is, the new "relevant factor" of whether a professional "is board certified or otherwise has demonstrated skill and experience in the bankruptcy field,"  11 U.S.C. § 330(a)(3)(E) (2006)—Seyfarth has attached its Attorney Biographical Information hereto as Exhibit 1.  The Attorney Biographical Information sets forth the qualifications of the Seyfarth attorneys listed herein, including their demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and in representation of clients in matters nationwide.

15907967v.3

## B. Expense Reimbursement Standards

69.     With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

70.     "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client."  *In re* Spanjer Bros., Inc., 191 B.R. at 749;  *see In re* Wildman, 72 B.R. at 731.

71.     In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

72.     Seyfarth submits that the Expenses are reimbursable and do not constitute "overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939;  Wildman, 72 Bankr. at 731.  Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost."  *In re* Thacker, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47 Bankr. at 584)[3].

---

[3] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.);  see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable.");  see also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost.");  see, e.g., Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such as rent, heat, and the like*, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added)

73.    In contrast, Seyfarth charges for its out-of-pocket expenses only, including the incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As previously discussed, the incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

74.    Such "user fee" expense billing closely adheres to the Seventh Circuit's market rate billing approach.  In this respect, the Seventh Circuit's market approach to compensation extends equally to the reimbursement of expenses, including those for online research.  See _In re Hunt's Health Care, Inc._, 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993);  accord _In re_ Hillsborough Holdings Corp._, 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in setting compensation for services under [330](a)(1), it would logically seem also to be a relevant factor in determining what categories to treat as reimbursable expenses under (a)(2).").

75.    For example, in Continental Illinois Securities, supra, the Seventh Circuit reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket expenses of using a computerized legal research service (LEXIS).  He thought those expenses should be part of the lawyers' overhead.  This was another clear error. If computerized research expenses were customarily treated in this fashion, lawyers' hourly rates would be even higher than they are, requiring an adjustment in the lodestar.  _But the more important point is that the market—the paying, arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than requiring that these items be folded into overhead_.  Markets know market values better than judges do.  And as with paralegals, so with computerized research:  if reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for that of the paralegal or the computer, 962 F.2d at 570 (emphasis added);  accord Harman v. Lyphomed, Inc._, 945 F.2d 969, 976 (7th Cir. 1991) ("The attorneys also claim that the court erred in excluding the roughly $10,000 expended in computer-assisted research.  The court felt that the expense 'is part of the amount allowed for attorney's fees.'  _We must reverse the district court here_.  Computer-assisted research fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable[. . . . as] expenses[.]") (emphasis added).

76.     The Seventh Circuit has remained consistent on this subject and has repeatedly

required attorney reimbursement for computerized legal research charges.  See, e.g., Uniroyal

Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn

our attention to the award of costs, we consider MTC's request that the costs of computerized

legal research be subtracted from the award.  *MTC claims that these expenses are better*

*characterized as overhead in the same way that maintenance of a law firm library is.  We reject*

*this claim*.") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846

(1996).

77.     Accordingly, lower courts in this District—including numerous judges of this

Court—have adhered to this controlling precedent.  See, e.g., Shula v. Lawent, 2004 U.S. Dist.

LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal

research charges" as "costs" that were "both reasonable and necessary"); Stamm v. Provident

Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett,

J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a

reasonable expense of litigation."); *In re* Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992)

(Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United

States (*In re* Price), 42 F.3d 1068 (7th Cir. 1994); *In re* Met-L-Wood Corp., 103 B.R. 972, 977

(Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as

"'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990); *In re* Prairie Cent. Ry.

Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the

Court to allow reimbursement of Lexis  and Westlaw research charges); *In re* Wildman, 72 B.R.

at 732 ("This Court adopts the view that computer research time that is both necessary and

attributable to a particular client *or* case is reimbursable under Section 330(a)(2).") (emphasis in

21

the original); *In re* UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), *Order Approving*

*Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And*

*Payment Of Compensation And Reimbursement Of Expenses* (Docket No. 15670) (allowing full

reimbursement of $8,085.93 in online legal research charges); *In re* Eagle Food Centers, Inc.,

Case No. 03-15299-CAD (Doyle, J.), *Order Approving Third And Final Application Of Skadden,*

*Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And*

*Reimbursement Of Expenses* (Docket No. 1136) (allowing full expense reimbursement of

$21,888 in "Computer Legal Research" during case period) (unpublished decision); *In re*

Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), *Order Approving Final Application Of*

*Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And*

*Reimbursement Of Expenses* (Docket No. 6987) (allowing expense reimbursement of

$139,934.07, including Westlaw and Lexis charges); *In re* Wickes, Inc., Case No. 04-02221-

BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To*

*DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And*

*Payment Of Interim Compensation And Reimbursement Of Expenses* (Docket No. 2935)

(allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

78.     Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid

down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs

containing a description so detailed as to make it impossible economically to recover [ ] costs[,

but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records."

Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir.

1991).

79.     In seeking reimbursement for the Expenses herein, Seyfarth has made every

attempt to fully comply with these dictates.

## VII.  NO PRIOR REQUEST

80.     No prior request for the relief requested by this Application has been made to this

Court or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.      Finding Notice of the Application sufficient as given and that no other or

further notice is necessary;

B.      Allowing and awarding Seyfarth on a final basis the Fees and Expenses;

C.      Authorizing the Trustee to make payment of such Fees and Expenses to

Seyfarth from the Estate, and

D.      Granting such other and further relief as this Court deems just and

appropriate.

Dated:  February 13, 2014                    Respectfully submitted,

                                             SEYFARTH SHAW LLP

                                             By:/s/ James B. Sowka_____
                                                Gus A. Paloian (06188186)
                                                James B. Sowka (6291998)
                                                SEYFARTH SHAW LLP
                                                131 South Dearborn Street, Suite 2400
                                                Chicago, Illinois 60603
                                                Telephone:  (312) 460-5000
                                                Facsimile:  (312) 460-7000

                                                *Counsel to Chapter 7 Trustee*
                                                  *Gus A. Paloian*

15907967v.3